# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DANIEL CARLOS GARCIA, CB0327,

Plaintiff,

v.

COUNTY OF SANTA CLARA, et al.,

Defendant(s).

Case No. 25-cv-08688-CRB  (PR)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

(ECF No. 3)

Plaintiff, a prisoner at California State Prison, Corcoran (CSP – COR), filed a pro se complaint under 42 U.S.C. § 1983 while he was at the Santa Clara County Jail (SCCJ) alleging various violations of his federal rights (and related state law rights) in connection with his transfer and holding at SCCJ as a material witness in a criminal case in Santa Clara County Superior Court.  Plaintiff specifically alleges that although Santa Clara County officials obtained a court order to remove him from the custody of the California Department of Corrections and Rehabilitation (CDCR) to the custody of the Santa Clara County Sheriff's Department, he was not afforded notice or an opportunity to object to the removal and was not served with the removal order or the subpoena to testify as a material witness.  Plaintiff further alleges that despite two state court orders directing Santa Clara County officials to transport him back to CSP – COR, and return him to the custody of CDCR, county officials kept him at SCCJ longer than they had authority to hold him.  Plaintiff also alleges that he was denied his federal right of access to the courts while at SCCJ.

Plaintiff seeks damages and declaratory and injunctive relief from Santa Clara County, Santa Clara County Sheriff Robert Jonsen, Santa Clara County District Attorney Jeffrey Rosen, Santa Clara County Deputy District Attorney Michael Gadeberg, Santa Clara County Assistant Sheriff Michelle Asban and SCCJ Captain Gurpreet Gill.

United States District Court
Northern District of California

Plaintiff sought an emergency temporary restraining order and preliminary injunction ordering defendants to immediately transport him from SCCJ to CSP – COR, and return him to the custody of CDCR, which the court dismissed as moot on October 10, 2025, after confirming that "plaintiff returned to CSP – COR and to the custody of CDCR on October 7, 2025." ECF No. 5 at 1.  In view of plaintiff's return/transfer back to CSP – COR and CDCR without further issue, his claims for declaratory and injunctive relief are dismissed as moot and this action will be limited to his claims for damages.[1]

**DISCUSSION**

A.    Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief."  Id. § 1915A(b).  Pro se pleadings must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

B.    Legal Claims

Plaintiff asserts three general violations of his federal rights (and related state law rights) under § 1983 stemming from his transfer and holding at SCCJ as a material witness in a criminal case in Santa Clara County Superior Court: (1) over-detention, (2) denial of procedural due

---

[1] When a prisoner is released from prison or transferred to another prison, and there is no reasonable expectation or demonstrated probability that he will again be subjected to the prison conditions from which he seeks declaratory/injunctive relief, as is the case here, the prisoner's claims for declaratory/injunctive relief may be dismissed as moot.  See Dilley v. Gunn, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (injunctive relief); Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012) (declaratory relief).

2

process, and (3) denial of access to the courts. Plaintiff also asserts an unlawful discriminatory conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(3).

Because this action is limited to plaintiff's claim for damages, plaintiff must set forth specific facts linking every defendant with his allegations of wrongdoing. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Plaintiff must allege and show how each and every defendant actually and proximately caused the deprivation of his federal rights of which he complains. Id. Conclusory allegations that county officials are responsible for alleged wrongdoing are not enough to support a claim for damages under § 1983. See id.

In a § 1983 action, an individual defendant can only be liable for his or her own misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Under no circumstances can a supervisor or superior be liable under § 1983 solely because he or she is responsible for the actions or omissions of another. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor or superior may be liable under § 1983 only upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's or superior's wrongful conduct and the constitutional violation. Henry A. v. Willden, 678 F.3d 991, 1003–04 (9th Cir. 2012).

A local governmental entity, such as a city or county, similarly may be subject to liability under § 1983 only where official policy or custom causes the constitutional violation of which plaintiff complains. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). To constitute actionable policy or custom, a local government's failure to supervise, monitor, or train must amount to deliberate indifference to the rights of the people with whom the local government's employees come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989). Only where a failure to supervise and train reflects a "'deliberate' or 'conscious' choice'" by a local government can the "shortcoming be properly thought of as a city [or county] 'policy or custom' that is actionable under § 1983." Id. at 389 (citation omitted).

### 1. Over-detention

Plaintiff alleges that he was unlawfully held at the SCCJ after the state court vacated its removal order on September 17, 2025, and directed county officials to transport him back to CSP

United States District Court
Northern District of California

– COR, and return him to the custody of CDCR, and again on September 30, 2025, directed county officials to transport him back to CSP – COR, and return him to the custody of CDCR, "as soon as possible, but not later than October 5, 2025." ECF No. 1 at 7.

A detainee may have a due process right to be released within a reasonable time after the reason for his detention has ended. Brass v. County of Los Angeles, 328 F.3d 1192, 1200 (9th Cir. 2003). The Fourteenth Amendment permits a "reasonable postponement" of a detainee's release "while the County copes with the everyday problem of process the release of the large number of prisoners who pass through its incarceration system." Brass v. County of Los Angeles, 328 F.3d 1192, 1202 (9th Cir. 2003) (quoting County of Riverside v. McLaughlin, 500 U.S. 44, 55 (1991)) (internal citations and brackets omitted). Plaintiff is not a detainee who is not yet convicted of a crime; he is a lawfully convicted felon serving a court-imposed sentence. Even if he can assert an over-detention claim under the Fourteenth Amendment, his return to CSP – Corcoran and CDCR would be subject to a reasonable postponement. Cf. id.

Plaintiff's over-detention claim will be dismissed with leave to amend to set forth specific facts in support of an unreasonable over-detention claim challenging the policies that exist(ed) for processing an inmate's release/transfer or challenging the way the policies were implemented by defendants, if possible. See Berry v. Baca, 379 F.3d 764, 768 (9th Cir. 2004). Plaintiff also must set forth specifical facts linking every defendant to his allegations of wrongdoing. See Leer, 844 F.2d at 634. Specifically, a claim of individual liability for unreasonable over-detention requires that plaintiff show that the individual defendant personally participated in his unreasonable over-detention. See Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010). And a claim of local government liability for unreasonable over-detention requires that plaintiff show that his unreasonable over-detention was the result of policies, or lack of policies, that amounted to deliberate indifference. See Mortimer v. Baca, 594 F.3d 714, 722–23 (9th Cir. 2010).

2.      Denial of Procedural Due Process

Plaintiff alleges that he was not given notice or an opportunity to be heard before he was transferred to SCCJ as a material witness in a criminal case in Santa Clara County Superior Court. He claims this amounted to a denial of procedural due process.

United States District Court
Northern District of California

A deprivation of due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Armstrong v. Reynolds, 22 F.4th 1058, 1066 (9th Cir. 2022) (citation modified). To state a claim for violation of due process in connection with a prison transfer (or any other prison liberty interest), a prisoner must allege facts showing a deprivation of "real substance." See Sandin v. Conner, 515 U.S. 472, 477-87 (1995). Only if the transfer will inevitably affect the duration of a sentence or impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," is the deprivation at issue one of real substance requiring notice and an opportunity to be heard and/or other process. Id. at 484.

"'Atypical and significant hardship' is a high bar." Nielsen v. Thornell, 101 F.4th 1164, 1171 (9th Cir. 2024) (citation modified). The Ninth Circuit has recognized such a hardship "where [prisons] confine prisoners to their cells for at least twenty-three hours a day and impose additional severe limitations on human contact." Id. at 1171–72. Prison conditions that fall short of this typically do not create a protected liberty interest. For example, placement in a private prison with more lockdowns and restrictions," "higher levels of violence," and "reduced programs and services" does not give rise to a constitutionally protected liberty interest. Id. at 1172. Neither does placement in a Restrictive Custody General Population Unit with conditions adverse to the rest of the prison. See Ashker v. Newsom, 81 F.4th 863, 887 (9th Cir. 2023).

Plaintiff's denial of procedural due process claim will be dismissed with leave to amend to set forth specific facts showing that the transfer to SCCJ amounted to a liberty interest deprivation of real substance under Sandin, if possible. Plaintiff also must set forth specific facts linking every defendant with his allegations of wrongdoing and showing how every defendant actually and proximately caused the deprivation of his due process rights of which he complains. See Leer, 844 F.2d at 634.

3.      Denial of Access to the Courts

Plaintiff alleges that he was denied his federal right of access to the courts while he was at SCCJ. He specifically alleges that he was prevented from participating in seven court cases, "causing missed hearings and deadlines." ECF No. 1 at 11.

United States District Court
Northern District of California

Prisoners have a constitutional right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977).  To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury.  See Lewis, 518 U.S. at 349–51.  To prove an actual injury, the prisoner must show that the inadequacy in the prison's program—whether lack of access to the law library or malfeasance by a prison guard—hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement.  See id. at 351, 354–55.  The prisoner must describe the underlying non-frivolous claim well enough to show that "the 'arguable' nature of the underlying claim is more than hope."  Christopher v. Harbury, 536 U.S. 403, 416 (2002) (footnote omitted).

Plaintiff's denial of access to the courts claim will be dismissed with leave to amend to set forth specific facts showing an inadequacy or inadequacies in SCCJ's legal access program that caused him an actual injury or injuries to court access, if possible.  Plaintiff must describe the underlying non-frivolous claim concerning his conviction or conditions of confinement and link any actual injury or injuries in connection with his pursuing said claim or claims with a specific inadequacy or inadequacies in SCCS's legal access program.  He also must set forth specific facts linking every defendant with his allegations of wrongdoing and showing how every defendant actually and proximately caused the deprivation of his rights of access to the court of which he complains.  See Leer, 844 F.2d at 634.[2]

4.    Conspiracy in Violation of 42 U.S.C. § 1985(3)

Plaintiff alleges that defendants engaged in an unlawful discriminatory conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985(3).  Among other things, he alleges that there was "collusion" between various county officials to maintain him in "unlawful detention."  ECF No. 1 at 12.

---

[2] To the extent plaintiff alleges that his transfer to SCCJ hindered his efforts file inmate grievances and appeals with CDCR and/or SCCJ, the allegations are dismissed without leave to amend because it is well established that there is no constitutional right to a prison or jail administrative grievance or appeal system.  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

6

Section 1985(3) was enacted by the Reconstruction Congress to protect individuals – primarily African Americans – from conspiracies to deprive them of legally protected rights. See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992). To bring a claim successfully under § 1985(3), a plaintiff must allege and prove: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1141 (9th Cir. 2000); Sever, 978 F.2d at 1536.

The Supreme Court has "made it clear" that § 1985(3) is "'not intended to apply to all tortious, conspiratorial interferences with the rights of others,' but only to those which were founded upon 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Briley v. California, 564 F.2d 849, 859 (9th Cir. 1977) (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)). The Court has "displayed a restrictive approach to the ambit of section 1985(3) coverage," Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985), and called it "a close question whether § 1985(3)" was intended to reach any "class-based animus other than animus against [African Americans] and those who championed their cause," United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 836 (1983). The rule in the Ninth Circuit "is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." Sever, 978 F.2d at 1536 (quoted source and internal quotation marks omitted). Specifically, the Ninth Circuit requires "either that [ ] courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." Id. (quoted source and internal quotation marks omitted).

Plaintiff alleges that defendants discriminated against him because he is a prisoner witness. He adds that defendants disregarded his constitutional rights in favor of their administrative convenience but would not have done so with "non-prisoner witnesses who would receive proper service, notice, witness fees, and prompt compliance with court orders for their release." ECF No. 1 at 13. But that's not a sufficient basis for a discriminatory conspiracy claim

7

under § 1985(3) because courts in the Ninth Circuit have consistently found that prisoners are not a protected class for purposes of § 1985(3).  See, e.g., Taylor v. Delatoore, 281 F.3d 844, 849 (9th Cir. 2002) ("indigent prisoners are not a suspect class"); Trerice, 769 F.2d at 1402–03 ("military prisoners" are not a protected class for purposes of § 1985(3)); Magee v. Christianson, No. 21-cv-00670-AWI-BAM, 2022 WL 2392531, at *5 (E.D. Cal. July 1, 2022) (cannot allege § 1985(3) claim based on "class of prisoners" at specific prison); Rivera v. Zewart, No. 16-cv-04489-MEJ, 2017 WL 2651982, at *6 (N.D. Cal. June 20, 2017) ("the 'class' of state prisoners is not protected under § 1985(3)"); Nakao v. Rushen, 542 F. Supp. 856, 859 (N.D. Cal. 1982) (class of "state prisoners" not protected under § 1985(3) because there has been no congressional determination that it requires special federal civil rights assistance and it is not comparable to classes based on race, national origin or sex).  Because prisoner witnesses are not a protected class for purposes of § 1985(3) and there is no indication that the conduct at issue was motivated by race, plaintiff's discriminatory conspiracy claim under § 1985(3) is dismissed without leave to amend.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed with leave to amend, as indicated above, within 28 days of this order.  The pleading must be simple and concise (not to exceed 15 pages) and must include the caption and civil case number used in this order and the words FIRST AMENDED COMPLAINT on the first page.  Failure to file a proper amended complaint within the designated time will result in the dismissal of this action.[3] [4]

Plaintiff filed this action while at SCCJ using his family's home address in Modesto, California as his mailing address.  Within 28 days of this order, plaintiff shall file a notice of change of address to his current mailing address at CSP – COR or show cause why he should be allowed to continue to use his family's home address as his mailing address.

[3] Plaintiff is advised that the amended complaint will supersede the original complaint and all other pleadings.  Claims and defendants not included in the amended complaint will not be considered by the court.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

[4] Plaintiff's motion for appointment of the United States Marshal (USM) for service of process (ECF No. 3) is DISMISSED without prejudice to renewing the motion/request with the amended complaint and accompanied by an application to proceed in forma pauperis (IFP) under 28 U.S.C. § 1915.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

The clerk is instructed to terminate the motion appearing on ECF as item number 3 and to send plaintiff a blank application to proceed IFP under 28 U.S.C. § 1915.

**IT IS SO ORDERED**.

Dated:  March 31, 2026

_____

CHARLES R. BREYER
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

### INSTRUCTIONS FOR FILING AN APPLICATION TO PROCEED
### *IN FORMA PAUPERIS* BY A PRISONER UNDER 28 U.S.C. § 1915

You must submit to the court a completed Prisoner's Application to Proceed *In Forma Pauperis* if you are unable to pay the entire filing fee at the time you file your complaint or petition. The court will consider as part of your application the transactions in your prison trust account statement for the last six months. If you are housed at a California Department of Corrections and Rehabilitation (CDCR) facility, the court's application form includes your authorization for CDCR to provide a certified copy of your trust account statement directly to the court. But if you are housed at a non-CDCR facility (such as a local jail), you must have your institution complete the certification at the end of the application form and attach a certified copy of your trust account statement.

**A.    Civil Actions other than Habeas Actions**

The fee for filing any civil action other than a petition for a writ of habeas corpus is $402 ($350 filing fee plus a $52 administrative fee). If you are not granted leave to proceed *in forma pauperis*, you must pay the $402 fee in one payment.

If you are granted leave to proceed *in forma pauperis*, you must still pay the $350 filing fee (not the $52 administrative fee), but the filing fee will be paid in several installments. You must pay an initial partial filing fee of 20 percent of the greater of (a) the average monthly deposits to your account for the 6-month period immediately before the complaint was filed or (b) the average monthly balance in your account for the six-month period immediately before the complaint was filed. The court will use the information provided on your trust account statement to determine the filing fee immediately due and will send instructions to you and the prison trust account office for payment.

After the initial partial filing fee is paid, your prison's trust account office will forward to the court each month 20 percent of the most recent month's income to your prison trust account, to the extent the account balance exceeds ten dollars ($10). Monthly payments will be required until the full filing fee is paid. If you have no funds over ten dollars ($10) in your account, you will not be required to pay part of the filing fee that month.

***If your application to proceed* in forma pauperis *is granted, you will be liable for the full $350 filing fee even if your civil action is dismissed. That means the court will continue to collect payments until the entire filing fee is paid.***

**B.    Habeas Actions**

The fee for filing a petition for a writ of habeas corpus is $5 ($5 filing fee plus $0 administrative fee). If you are granted leave to proceed *in forma pauperis*, you will not be required to pay any portion of this fee. If you are not granted leave to proceed *in forma pauperis*, you must pay the fee in one payment and not in installments.

***If you use a habeas form to file a civil action other than a habeas action, you will be required to pay the fee applicable to civil actions other than habeas actions.***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |
|---|

Plaintiff,

v.

|  |
|---|

Defendant(s).

CASE NUMBER _____

**PRISONER'S APPLICATION AND
DECLARATION TO PROCEED
*IN FORMA PAUPERIS***

I, (print your name) _____, declare under penalty of perjury that I am the plaintiff in this case; I believe I am entitled to relief; and I am unable to pay the costs of this proceeding or give security thereof.

In support of this application, I provide true, correct and complete answers to all of the following questions:

1.  Are you presently employed in prison? ☐ Yes  ☐ No

    The number of hours you work per week: _____ The hourly rate of pay: _____

2.  For the past twelve months, list the amount of money you have received from any of the following sources.

    a.  Business, profession or self-employment                          $ _____

    b.  Income from rent, interest or dividends                          $ _____

    c.  Pensions, annuities or life insurance payments                   $ _____

    d.  Disability, Social Security or other government source           $ _____

    e.  Gifts or inheritances                                           $ _____

    f.  Describe any other source of income: _____   $ _____

3.  List the amount for each of the following (include prison account funds):

    Cash on hand $ [____]    Checking account $ [____]    Savings account $ [____]

4.  Do you own or have any interest in any real estate, stocks, bonds, notes, retirement plans, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

    If Yes, describe the property and state its approximate value:

    ☐ Yes [_____]    $ [____]

    ☐ No

5. Do you have any other assets?

   If Yes, list the asset(s) and the approximate value:

☐ Yes

☐ No

$

6. Does anyone depend upon you for financial support?

   If Yes, state their relationship to you, and indicate how much you contribute towards their support each month. Use initials (not names) to refer to minor children.

☐ Yes

☐ No

$

*This form must be dated and signed below for the court to consider your application.*

   I hereby authorize the institution having custody of me to provide a certified copy of my trust account statement for activity covering the last six months to the court. Additionally, once eligibility is established, I further authorize the institution having custody of me to collect from my trust account and forward to the court payments in accordance with 28 U.S.C. § 1915(b)(2).

_____          _____          _____
        Signature of Prisoner                           Inmate Number                       Date

## CERTIFICATION FOR PRISONERS *NOT* IN CDCR CUSTODY

CERTIFICATE OF FUNDS IN PRISONER'S ACCOUNT
(to be completed by authorized officer)

I certify that attached hereto is a true and correct copy of the prisoner's trust account statement showing

the transactions of _____ for the last six months at
                                        PRISONER'S NAME

_____, where (s)he is confined.
                    NAME OF NON-CDCR INSTITUTION

_____          _____          _____
    Signature of Authorized Officer                  Officer's Name (printed)                  Date